IN THE CIRCUIT COURT OF THE
FIFTH JUDICIAL CIRCUIT, IN AND
FOR MARION COUNTY, FLORIDA

CASE NO: 05-2479-CAB

ANNE MARIE ROSS,

      Plaintiff,

vs.

MEDLINE INDUSTRIES, INC.,
a foreign corporation,

      Defendant.

_____/

## COMPLAINT

Plaintiff, Anne Marie Ross (referred to herein as "Ms. Ross") sues the Defendant, Medline Industries, Inc. (referred to herein as "Medline"), and states:

### NATURE OF CLAIMS

1. This is an action against Medline for sexual harassment, sex discrimination, age discrimination and retaliation brought pursuant to the Florida Civil Rights Act of 1992 ("FCRA").

### STATUTORY PREREQUISITES TO SUIT

2. Ms. Ross has exhausted her administrative remedies and complied with all statutory prerequisites to maintaining the claims asserted herein under the FCRA. Further, Ms. Ross has performed and fulfilled all conditions precedent to instituting this action under the FCRA. (*See* Exhibit A: Notice of Right to Sue).

Complaint - 1

## JURISDICTION, VENUE AND PARTIES

3. This is an action for damages that exceed $15,000.00.

4. Ms. Ross is a resident of Marion County, Florida, over 18 years of age, who is otherwise sui juris.

5. Medline is a foreign corporation registered in Florida and, at all times material to this complaint, operating in Marion County, Florida, and in other locations throughout the State of Florida.

6. Venue for this action is appropriate in Marion County, Florida because Medline has offices in Marion County, Florida, and because many of the events giving rise to this action occurred in Marion County.

## GENERAL ALLEGATIONS

7. Ms. Ross is a member of a protected class as the FCRA prohibits discrimination because of sex and age, she is over 40 years of age, and at all times material was an employee of Medline for purposes of the FCRA.

8. At all times material to this complaint, Medline was an employer within the contemplation of the FCRA, as it employed fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

9. As Ms. Ross' employer, Medline was prohibited under the FCRA from discriminating against her because of sex or age with respect to the compensation, terms, conditions, or privileges of her employment.

10. Ms. Ross had been a salesperson employed by Maxxim Medical, Inc. for eight years when Medline purchased its medical supply business in November of 2003. At that time,

Ms. Ross became an employee of Medline, and was required to sign a contract containing non-compete and confidentiality agreements as a condition of her continued employment. The employment agreement contained a venue provision requiring that any litigation involving the employment agreement take place in Cook County, Illinois.

11. During December 12 and 13, 2003, Ms. Ross was required to attend a sales meeting in Orlando, Florida. At that time, she was subjected to a work atmosphere charged with sexual actions and comments that shocked and offended her and the other female sales representatives present.

12. On December 12, 2003, Ms. Ross complained to her supervisor, Mark Gallarelli, and told him she was not going to attend a social occasion with the rest of the sales persons at the meeting because of the sexual misconduct, Mr. Gallarelli ignored her complaints and stated: "Just so you know, in the future young lady, these outings are not optional." The hostile sexual environment continued the following day, December 13, 2003.

13. In April of 2004, Ms. Ross asked one of her supervisors, Tom Powers, to call a customer and give tell it from a corporate perspective how important its business was to Medline. Mr. Powers told Ms. Ross: "Don't you ever, ever put me in the position of having to call a customer ever again. Do you understand me?" "I don't need your fucking problems." Ms. Ross told Mr. Powers not to use that type of language with her again.

14. Ms. Ross complained to her immediate supervisor, Chic Silver, about Mr. Powers' conduct. The next day, during a conference call with Mr. Silver and Mr. Powers, Mr. Powers apologized to Ms. Ross for his language. However, within an hour of the meeting, Mr. Powers issued a scathing and defamatory memorandum to Ms. Ross, copying all of his and Ms.

Ross' supervisors (all of whom were male). The memorandum accused Ms. Ross of poor job performance and of making derogatory comments regarding Medline to its customers, among other falsehoods.

15. Ms. Ross immediately complained to Medline's Human Resources director, Joseph Becker, about Mr. Powers' harassing conduct and retaliatory conduct. Mr. Becker took no action on Ms. Ross' complaint, and when she asked for an explanation, he said that since Mr. Powers had apologized for using profanity, nothing else would be done.

16. On July 7, 2004, Ms. Ross was required to attend another sales representative meeting, where she was again subjected to sexual comments and behavior. Because Medline had failed to respond to her earlier complaints, she did not complain on this occasion.

17. After Ms. Ross unsuccessfully complained to Mr. Gallarelli, Mr. Silver, and Mr. Becker about sexual harassment, her supervisors (all of whom were male) continued to make false accusations regarding Ms. Ross allegedly poor work performance, and subjected her to working conditions that made it impossible for her to perform her job.

18. On August 27, 2004, Ms. Ross resigned instead of suffering continued harassment at the hands of her male co-workers and supervisors.

19. After her forced resignation, Medline replaced Ms. Ross with a younger male employee with less experience and qualifications.

20. Approximately one month after her forced resignation from Medline, Ms. Ross found employment as a salesperson with Kimberly Clark Corporation for significantly less money than she was earning at Medline.

21. Despite the fact that she questioned the validity of the non-compete and confidentiality agreements contained within her Medline employment agreement, Ms. Ross informed Kimberly Clark of the employment agreements' provisions, and she and her new employer went to great lengths to avoid even the appearance of a violation. This included Ms. Ross servicing hospitals in Georgia, even though her home was in Marion County, Florida

22. As set forth above, Ms. Ross filed a complaint of discrimination with the FCHR and the EEOC on or about February 9, 2005. On March 2, 2005, Medline filed a Verified Complaint for Injunctive, Monetary and Other Relief against Ms. Ross in the Circuit Court of Cook County, Illinois, alleging that she had violated the non-compete and confidentiality provisions of her employment agreement. As a result, Ms. Ross was required to hire counsel in Illinois and travel to Illinois to defend the suit.

23. Medline's Illinois lawsuit against Ms. Ross is devoid of any justiciable issue of law or fact and was filed solely in retaliation for Ms. Ross filing a complaint of discrimination with the FCHR and the EEOC.

## COUNT I - DIRECT LIABILITY FOR HOSTILE WORK ENVIRONMENT SEXUAL HARASSMENT UNDER THE FCRA

24. Ms. Ross re-alleges and incorporates paragraphs 1-18.

25. This is a claim for hostile work environment sexual harassment asserted against Medline under the FCRA, § 760.10, et seq., Fla. Stat. (2004).

26. During her employment with Medline, Ms. Ross was subjected to a sexually charged and harassing hostile work environment.

27. The sexually harassing behavior Ms. Ross received at the hands of her co-workers was unwelcome in that it was uninvited and undesired by her.

28. The sexually harassing behavior Ms. Ross received at the hands of her co-workers was so severe and pervasive that it altered the terms of her employment by creating a work environment that a reasonable person, considering all of the circumstances, would have found hostile and abusive.

29. Medline had actual knowledge of Ms. Ross' sexually harassing behavior as a result of her complaints to upper management, including Mr. Gallarelli, Mr. Silver, and Mr. Becker.

30. The harassment Ms. Ross received at the hands of her co-workers was so pervasive, under a totality of the circumstances, that Medline should have known of the sexually harassing behavior, and thus had constructive knowledge of the hostile work environment.

31. Despite having actual and constructive knowledge of the sexually harassing work environment experienced by Ms. Ross, Medline unreasonably failed to take immediate and appropriate remedial action to stop the harassment, and the harassment continued.

32. Medline is directly liable for the sexually harassing work environment caused by its employees because of its failure to take prompt and effective remedial action upon receiving notice of the sexually harassing behavior.

33. As a result of Medline's discriminatory actions, through its employees or agents, Ms. Ross' working conditions deteriorated, and became sufficiently egregious that any reasonable employee in her position would feel compelled to resign.

34. As a proximate result of the aforementioned discrimination, Ms. Ross has suffered damages, including, but not limited to, the following:

   a. Lost wages, income and employment benefits.

   b. Physical and emotional pain, suffering, mental anguish, loss of enjoyment of life, and dignitary injury.

   c. Past and future medical bills.

   d. Costs, including attorney's fees, incurred in pursuing redress for deprivation of her civil rights.

35. Medline's discriminatory actions, through its employees or agents, gives rise to a cause of action under the FCRA. In particular, the FCRA forbids discrimination against any employee on the basis of sex with respect to the compensation, terms, conditions and privileges of employment.

36. Medline's discriminatory actions, through its employees or agents, were performed with malice and or reckless indifference to Ms. Ross' civil rights.

37. If Ms. Ross prevails on her FCRA claim, she will be entitled to a reasonable attorneys' fee pursuant to the FCRA.

**WHEREFORE**, Ms. Ross prays this Honorable Court grant the following relief:

   a. Compensatory damages for physical and emotional pain, suffering, mental anguish, loss of enjoyment of life, dignitary injury, and other non-pecuniary losses;

   b. Past and future medical expenses;

    c.    Back pay, including the economic value of lost employment benefits and interest on back pay;

    d.    Front pay, including interest on front pay, or for reinstatement in lieu of front pay;

    e.    Punitive damages:

    f.    Attorney's fees and costs;

    g.    Any additional relief this Court deems just and appropriate.

## COUNT II - GENDER DISCRIMINATION IN VIOLATION OF FCRA

38. Ms. Ross realleges and incorporates paragraphs 1 through 19, and 33.

39. This is a claim for gender discrimination asserted against Medline under FCRA, § 760.10, et seq., Fla. Stat. (2004).

40. Ms. Ross' male supervisors conspired to force her to resign because they did not want a highly skilled and paid female working as a salesperson at Medline.

41. Medline has a pattern of not hiring women for highly paid positions of authority within the company, and of forcing the resignation of those highly paid female employees in positions of authority whose employment they inherit through acquisition of other companies.

42. As a proximate result of the aforementioned discrimination, Ms. Ross has suffered damages, including, but not limited to, the following:

    a.    Lost wages, income and employment benefits.

    b.    Physical and emotional pain, suffering, mental anguish, loss of enjoyment of life, and dignitary injury.

    c.    Past and future medical bills.

      d.      Costs, including attorney's fees, incurred in pursuing redress for deprivation of her civil rights.

43.      Medline's discriminatory actions, through its employees or agents, gives rise to a cause of action under the FCRA. In particular, the FCRA forbids discrimination against any employee on the basis of sex with respect to the compensation, terms, conditions and privileges of employment.

44.      Medline's discriminatory actions, through its employees or agents, were performed with malice and or reckless indifference to Ms. Ross' civil rights.

45.      If Ms. Ross prevails on her FCRA claim, she will be entitled to a reasonable attorney's fee pursuant to the FCRA.

**WHEREFORE**, Ms. Ross prays this Honorable Court grant the following relief:

      a.      Compensatory damages for physical and emotional pain, suffering, mental anguish, loss of enjoyment of life, dignitary injury, and other non-pecuniary losses;

      b.      Past and future medical expenses;

      c.      Back pay, including the economic value of lost employment benefits and interest on back pay;

      d.      Front pay, including interest on front pay, or for reinstatement in lieu of front pay;

      e.      Punitive damages;

      f.      Attorney's fees and costs;

      g.      Any additional relief this Court deems just and appropriate.

## COUNT III – AGE DISCRIMINATION IN VIOLATION OF FCRA

46. Ms. Ross realleges and incorporates paragraphs 1 through 19, and 33.

47. This is a claim for age discrimination asserted against Medline under FCRA, § 760.10, et seq., Fla. Stat. (2004).

48. Ms. Ross' male supervisors conspired to force her to resign because they did not want a highly skilled and paid female over 40 years of age working as a salesperson for Medline.

49. Medline has a pattern of not hiring women over 40, and of forcing the resignation of those highly paid female employees over 40 years of age whose employment they inherit through acquisition of other companies.

50. As a proximate result of the aforementioned discrimination, Ms. Ross has suffered damages, including, but not limited to, the following:

    a. Lost wages, income and employment benefits.

    b. Physical and emotional pain, suffering, mental anguish, loss of enjoyment of life, and dignitary injury.

    c. Past and future medical bills.

    d. Costs, including attorney's fees, incurred in pursuing redress for deprivation of her civil rights.

51. Medline's discriminatory actions, through its employees or agents, gives rise to a cause of action under the FCRA. In particular, the FCRA forbids discrimination against any employee on the basis of sex with respect to the compensation, terms, conditions and privileges of employment.

52. Medline's discriminatory actions, through its employees or agents, were performed with malice and or reckless indifference to Ms. Ross' civil rights.

53. If Ms. Ross prevails on her FCRA claim, she will be entitled to a reasonable attorney's fee pursuant to the FCRA.

**WHEREFORE**, Ms. Ross prays this Honorable Court grant the following relief:

    a. Compensatory damages for physical and emotional pain, suffering, mental anguish, loss of enjoyment of life, dignitary injury, and other non-pecuniary losses;

    b. Past and future medical expenses;

    c. Back pay, including the economic value of lost employment benefits and interest on back pay;

    d. Front pay, including interest on front pay, or for reinstatement in lieu of front pay;

    h. Punitive damages;

    i. Attorney's fees and costs;

    j. Any additional relief this Court deems just and appropriate.

### COUNT IV – RETALIATION UNDER FCRA

54. Ms. Ross realleges and incorporates paragraphs 1 through 23, and 33.

55. This is a claim for retaliation against Medline pursuant to the FCRA, § 760.10, et seq., Fla. Stat. (2004).

56. The FCRA prohibits employers, such as Medline, from taking adverse employment actions against employees in retaliation for engaging in statutorily protected activity under the FCRA.

57. As an employee of Medline, Ms. Ross was protected against retaliatory adverse employment actions for engaging in statutorily protected activity under the FCRA. More specifically, Ms. Ross was protected against retaliatory adverse employment action for opposing any of Medline's practices made an unlawful employment practice under the FCRA. Further, Ms. Ross was protected against retaliation in employment decisions for opposing sexually harassing behavior against her in the work place, and for filing administrative complaints with the FCHR and the EEOC.

58. Ms. Ross engaged in protected activity when she complained to Mr. Gallarelli about the sexually harassing work environment at sales meeting, when she told Mr. Powers not to using sexual language with her, when she complained to Medline's Human Resources director about Mr. Powers' retaliatory conduct, and finally when she filed a complaint of discrimination with the EEOC and the FCHR.

59. In opposing sexually harassing behavior at the hands of co-workers and supervisors, in complaining to Medline's upper management about it, and in filing a complaint of discrimination with the FCHR and the EEOC, Ms. Ross had a good faith, reasonable belief that her co-workers and supervisors had engaged in or were engaging in unlawful sexual harassment. As such, Ms. Ross engaged in statutorily protected activity within the meaning of the FCRA.

60. In retaliation for Ms. Ross' statutorily protected activity, Medline, through its employees and agents, disciplined her, subjected her to unreasonable working conditions, constructively terminated her employment, and filed a frivolous, retaliatory lawsuit against her.

61. Medline's retaliatory actions against Ms. Ross amounted to adverse employment actions and interference with statutorily protected activities for purposes of the FCRA.

62. Medline, through its employees and agents, was aware of Ms. Ross' statutorily protected activities when it subjected her to adverse employment actions and when it filed a frivolous, retaliatory lawsuit against her. Specifically, the adverse actions were taken after Ms. Ross engaged in protected activity.

63. Meldine took adverse employment actions and other retaliation against Ms. Ross because she engaged in statutorily protected activity, or, in the alternative, her statutorily protected activity was a motivating factor in the adverse employment actions and other retaliation.

64. As a proximate result of Medline's intentional retaliatory actions, through its employees or agents, Ms. Ross has suffered damages including, but not limited to, the following:

    a. Lost wages, income and employment benefits.

    b. Physical and emotional pain, suffering, mental anguish, loss of enjoyment of life, and dignitary injury.

    c. Past and future medical bills.

    d. Costs, including attorney's fees, incurred in pursuing redress for deprivation of her civil rights.

e. Costs, including attorneys' fees, incurred in defending the frivolous and retaliatory lawsuit filed by Medline against her in Illinois.

65. The aforementioned intentional retaliatory actions by Sullivan, through its employees and agents, give rise to a cause of action under the FCRA. Specifically, the FCRA prohibits employers from taking adverse employment actions against employees in retaliation for engaging in statutorily protected activities.

66. Medline's intentional retaliatory actions, through its employees and agents, were performed with malice or with reckless indifference to Ms. Ross' protected civil rights.

67. If Ms. Ross prevails on her FCRA claim, she will be entitled to a reasonable attorneys' fee pursuant to the FCRA.

**WHEREFORE**, Ms. Ross prays this Honorable Court grant the following relief:

a. Compensatory damages for emotional pain, suffering, mental anguish, loss of enjoyment of life, dignitary injury, and other non-pecuniary losses;

b. Past and future medical expenses;

c. Back pay, including the economic value of lost employment benefits and interest on back pay;

d. Front pay, including interest on front pay, or for reinstatement in lieu of front pay;

e. Punitive damages;

f. Attorney's fees and costs;

g. Any additional relief this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, Anne Marie Ross, demands a trial by jury on all issues so triable.

Dated this 29th day of November, 2005.

By: /s/ James E. Collins
James E. Collins
Florida Bar No. 708460
Robert H. McLean
Florida Bar. No. 0098094
AYRES, CLUSTER, CURRY, McCALL,
COLLINS & FULLER, P.A.
21 Northeast First Avenue
Post Office Box 1148
Ocala, Florida 34478-1148
(352) 351-2222
(352) 351-0312 (fax)
Attorneys for Plaintiff

EEOC Form 161-B (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: Anne M. Ross<br>1606 Se 16th Ave<br>Ocala, FL 34471 | From: Tampa Area Office<br>501 East Polk Street<br>Room 1000<br>Tampa, FL 33602 |

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 151-2005-01285 | Edwin Gonzalez-Rodriquez, Investigator | (813) 228-2505 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA): This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

Age Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Manuel Zurita, Director

8/29/05 (Date Mailed)

Enclosure(s)

cc: MEDLINE INDUSTRIES INC
1 Medline Place
Mundelein, IL 60060

Thomas Groendyke, Esq.
Douberly & Cicero
15100 NW 67th Ave. Ste. 204
Miami Lakes, FL 33014

Robert H. McLean, Esq.
Ayres, Cluster, Curry, McCall, Collins, & Fuller P.A.
P.O. Box 1148
Ocala, FL 34478

PLAINTIFF'S EXHIBIT A

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974: See Privacy Act Statement before completing this form. | AGENCY<br><br>EEOC | CHARGE NUMBER<br><br>151-2005-01285 |
|---|---|---|

**FLORIDA COMMISSION ON HUMAN RELATIONS and EEOC**
State or local Agency, if any

| Name (indicate Mr.,Ms., Mrs)<br><br>Ms. Anne Marie Ross | | HOME TELEPHONE (include area code)<br><br>(352) 895-1062 |
|---|---|---|
| STREET ADDRESS<br><br>1606 S.E. 16th Avenue | CITY, STATE AND ZIP CODE<br><br>Ocala, Florida 34471 | DATE OF BIRTH<br><br>Dec. 10, 1959 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (if more than one list below)

| NAME<br><br>Medline Industries, Inc. | NO. OF EMPLOYEES, MEMBERS<br><br>15+ | TELEPHONE (include area code)<br><br>(847) 949-3015 |
|---|---|---|
| STREET ADDRESS<br><br>One Medline Place | CITY, STATE AND ZIP CODE<br><br>Mundelein, Illinois 60060-4486 | COUNTY |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))<br><br>☐ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN<br><br>☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ OTHER(specify) | DATE DISCRIMINATION TOOK PLACE<br><br>September 9, 2004 |
|---|---|

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s):

I. I was a long term employee of Maxxim Medical, Inc. (8 years) when Medline Industries, Inc. bought Maxxim Medical's supply business in November of 2003. At that time, I became a Medline employee. As with Maxxim, my office was in Florida and I served customers in Florida. Almost immediately after my employment with Medline began, I was subjected to a sexually charged and abusive work environment. When I complained to supervisors, my working conditions were adversely changed, and I was subjected to further harassment. I was forced to resign on September 9, 2004.

II. Medline consistently promoted male employees with less experience and qualifications than I to supervisory positions above me.

III. I believe I have been sexually harassed, discriminated against based upon my sex, and retaliated against for complaining about harassment, all in violation of Title VII of the Civil Rights Act of 1964, as amended, and Chapter 760, Florida Statutes.

| ☒ I want this charge filed with both the EEOC and the State or local agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
| --- | --- |
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>2/3/04                    *[signature]*<br><br>Date            Charging party (signature) | SIGNATURE OF COMPLAINANT<br>*[signature]*<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day month, year)<br><br>02/03/2005  *[signature]* |

ROBERT H. McLEAN
Notary Public, State of Florida
My comm. exp. May 4, 2006
Comm No. DD 110019

**CT CORPORATION**
A WoltersKluwer Company

**Service of Process Transmittal**
12/21/2005
Log Number 510790747

**TO:** Jim Abrams
Medline Industries, Inc.
1 Medline Pl.
Mundelein, IL, 60060

**RE:** **Process Served in Florida**

**FOR:** Medline Industries, Inc. (Domestic State: IL)

*Alex* (handwritten, circled)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Anne Marie Ross, Pltf. vs. Medline Industries, Inc., etc., Dft. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Exhibits, Notice, First Set of Interrogatories, First Requests for Production |
| **COURT/AGENCY:** | Marion County Circuit Court, FL, Marion, FL<br>Case # 05-2479-CAB |
| **NATURE OF ACTION:** | Employee Litigation - Sexual Harassment - Sex and Age Discrimination - Retaliation - Hostile Work Environment - Forced Resignation |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Plantation, FL |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 12/21/2005 at 10:25 |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days - Summons // Within 45 days - Interrogatories, Production |
| **ATTORNEY(S) / SENDER(S):** | Robert H. McLean<br>Ayres, Cluster, Curry, McCall, Collins & Fuller, P.A.<br>21 Northeast First Avenue<br>Post Office Box 1148<br>Ocala, FL, 34478-1148<br>352-351-2222 |
| **REMARKS:** | Trial by jury demanded |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex 2 Day, 790755071863 |
| **SIGNED:** | C T Corporation System |
| **PER:** | Donna Moch |
| **ADDRESS:** | 1200 South Pine Island Road<br>Plantation, FL, 33324 |
| **TELEPHONE:** | 954-473-5503 |

Page 1 of 1 / TB

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action.